## BARRETT v. AUSTIN.

### No. 14,753; September 1, 1892.

#### 31 Pac. 3.

Contract to Bore Well—Abandonment of Work.—In an action on a contract for boring a well on plaintiff's land it appeared that he agreed to furnish the casing, fuel, and board for defendant and his men "at his own expense," and pay a certain sum when the well was completed. Defendant agreed to continue boring the well, "barring bad weather or other unavoidable hindrances," till a certain depth was reached or impenetrable rock was encountered. When about half the agreed depth was reached, defendant's auger broke near the lower end, and became fastened in the well. Defendant claimed he could remove the broken piece, and, after striving unsuccessfully for three weeks, plaintiff refused to furnish further fuel and board, and defendant abandoned the work. Held, that plaintiff was not entitled to recover for the value of supplies furnished defendant to the date the work was abandoned, since by the contract he was not released from furnishing them while boring was prevented by "unavoidable hindrances."

Contract to Bore Well—Abandonment of Work.—In such action defendant is not entitled to recover on a cross-complaint for the number of feet bored, at the contract price, since he was not prevented by plaintiff, nor by encountering impenetrable rock, from performing his contract.

APPEAL from Superior Court, Fresno County; M. K. Harris, Judge.

Action by B. H. Barrett against O. A. Austin on a contract for boring a well. From a judgment for plaintiff, defendant appeals. Reversed.

R. B. Terry and Geo. B. Graham for appellant; Church & Cory for respondent.

BELCHER, C.—This is an action to recover damages for breach of contract. It is alleged in the complaint that on the fourth day of February, 1890, plaintiff and defendant entered into a written contract, a copy of which is set out, for the boring of a well on plaintiff's land; that plaintiff complied with all the conditions of the contract to be performed on his part, and in pursuance thereof furnished the materials and supplies provided for of the value of $1,000; and the defendant failed and refused to comply with any of the conditions to be performed on his part, and that, by reason of such failure and refusal, plaintiff had been damaged in the sum of $1,000, for which he asked judgment. By the contract the plaintiff bound himself "to furnish all the tubing and casing at his own expense; also all necessary fuel for the use of the engine, and all the casing clay needed in the boring of a certain well, now commenced and sunk about one hundred and forty feet, on the following described land," etc.; "also to board and furnish house room for the men— three in number—employed in boring said well"; "also to pay to the party of the second part (defendant) seventy cents per foot in depth, commencing from the top of the ground, for each and every foot in depth of said well, and to make said payment in full, as aforesaid, at the completion and cessation of the boring of said well." And the defendant bound himself "to continue the boring of said well, commencing on the eleventh day of February instant, barring bad weather or other unavoidable hindrances, until the depth of one thousand feet shall have been secured," provided that if a satisfactory flow of water should be secured, or impenetrable rock be encountered, before the depth of one thousand feet should be reached, then the boring was to cease, and the defendant was to be paid for the work done, as before provided. By his answer, the defendant admitted the execution of the contract, but denied that plaintiff had complied with all the

conditions thereof as alleged; and also denied that he had sustained damages in the sum of $1,000, or in any sum, by reason of any failure, neglect, or refusal on the part of defendant to perform the conditions of the contract to be by him performed; and alleged that plaintiff was the party in default, and by his own acts had prevented the completion of the work. Defendant also filed a cross-complaint, in which he set up the contract, and alleged that under and in pursuance of its terms he commenced boring the well on the eleventh day of February, 1890; that he had at the place of performance all necessary machinery and assistance for the full execution and completion thereof; that he steadily and industriously continued the work until the ninth day of April, 1890, when the plaintiff failed and refused to furnish any more fuel for the engine or board for the men; and that by reason of such failure and refusal he was then, and ever since had been, prevented from proceeding and fully completing the work required of him by the terms of the contract, although he was, and at all times since had been, ready, willing and able to perform all the conditions required to be kept and performed by him; that, in accordance with the terms of the contract, he bored the well to a depth of five hundred and sixty-three feet, and at the request of plaintiff furnished and used therein thirty-four feet of casing of the value of $15.30, and loaned to the plaintiff $2.50; that there was due to defendant from plaintiff, for the boring done, the casing furnished, and the money loaned, the sum of $411.90, for which he prayed judgment. At the trial it was proved, without contradiction, that the defendant commenced boring the well on the 11th of February, and continued the work a little more than a month, when his boring pipe and auger broke near the lower end thereof. He then tried to remove the broken pieces, and to that end worked diligently until the 9th of April. Up to that time the plaintiff furnished fuel for the engine and board for the men, but he then refused to furnish them any longer. The plaintiff testified: "The boring was stopped by reason of his boring pipe breaking off and leaving the auger at the bottom of the well. Defendant worked about two or three weeks trying to get the auger out, . . . . but he never succeeded in getting it out, and finally I quit, because I never agreed to dig his tools out, if

he got them fast. I quit furnishing him provisions after he got the auger stuck in the well, I think about two or three weeks. . . . . I saw no way to get the auger and boring pipe out of the well. Mr. Austin says he can get it out. He always contended that he would get it out. Said he could bore the well. . . . . I didn't propose to keep furnishing him with fuel and provisions to dig out his tools. I didn't consider that I had agreed to do that. After he got them down there he could not get them out, and I quit. He told me that he could get the tools out and complete the well.''

When the plaintiff refused to furnish any more fuel or provisions, defendant notified him that, unless they were furnished, he would be compelled to stop all further work. He testified: ''I remained there and worked all the time steadily at the work until the time he quit furnishing me and refused to furnish me the supplies that is required of him by the contract. I was compelled to quit for want of these supplies.'' When the work was stopped defendant had bored the well to a depth of five hundred and sixty-three feet, and had used four hundred and thirty-eight feet of the casing furnished by plaintiff, the cost price of which was seventy-five cents a foot. The court found that the plaintiff had complied with all the conditions of the contract to be performed on his part, and that he caused to be delivered at the proper place casing of the value of $400, and furnished board and lodging to the defendant of the value of $30, and wood of the value of $150; that defendant failed, neglected, and refused to comply with the conditions of the contract to be performed on his part, and abandoned the contract before the commencement of the action; and, as a conclusion of law, that the plaintiff was entitled to judgment against the defendant for the sum of $580, damages for breach of the contract and costs. Judgment was accordingly so entered, from which, and from an order denying a new trial, defendant appeals.

1. It is apparent that the judgment as entered was erroneous. It allowed the plaintiff $400 for the casing delivered, when, at most, he was entitled only to recover for so much as was used, the cost of which was $328.50. Besides, the casing is still in his land, and belongs to him, and it may perhaps be taken out, and then have some value over the cost of its recovery. The judgment also ignores the defendant's

claim for the casing furnished and the money paid out by him.

2. If the judgment might be modified so as to correct the errors above noted, still we are unable to see how, under the facts shown, the plaintiff was entitled to any relief. By the contract he obligated himself to furnish the casing, fuel, and board "at his own expense," and the defendant obligated himself to commence and continue the boring, "barring bad weather or other unavoidable hindrances." There was no provision that the plaintiff should be released from furnishing the supplies during the continuance of bad weather or other hindrances, and that he did not understand that he was so released is shown by the fact that he continued to furnish them for about three weeks after the auger was broken. It is difficult to define the words "unavoidable hindrances," but we think they must have been intended to include accidents such as occurred here. It is a matter of common knowledge that tools and machinery often unexpectedly break, and that augers used in boring wells frequently break in the ground, without any carelessness or fault on the part of the parties using them. The plaintiff, therefore, was not justified in refusing to furnish any more supplies, because he thought the broken pieces could never be removed, when the defendant, an experienced well-borer, was trying diligently to remove them, and insisting that he could and would remove them, and complete the boring of the well. It is true that it might have been a hardship on plaintiff to be compelled to continue furnishing the supplies for an indefinite time, but the hardship on defendant would have been equally great or greater, as he had to employ three men and keep and use costly machinery during the period of delay. It was, of course, an unfortunate accident, but, in the absence of a stipulation to the contrary, each party must bear his share of the loss. The covenants were mutual, and, when the plaintiff refused to furnish any more supplies, the defendant was justified, if he chose to do so, in stopping the work, but his stopping did not give the plaintiff any cause of action for damages.

The defendant claimed in the court below, and claims here, that he was entitled to have judgment entered in his favor, according to the prayer of his cross-complaint. We do not agree with him in this. By the terms of the contract he was

only to be paid when he had bored the well to a depth of a thousand feet, or had found a sufficient supply of water, or had met with impenetrable rock. Now, while he may have been justified in stopping the work as he did, still he was not prevented by the acts of the plaintiff from going on and performing the contract on his part: Cox v. McLaughlin, 52 Cal. 590, and 54 Cal. 605. He might have furnished the necessary supplies himself, and doubtless when the well was sunk to the required depth could have maintained an action to recover their value. Our conclusion is that when the action was commenced the plaintiff had no cause of action against the defendant for the materials furnished, and the defendant none against the plaintiff for the work then done. We therefore advise that the judgment and order be reversed and the cause remanded.

We concur: Foote, C.; Vanclief, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are reversed and the cause remanded.